**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA ) | | |
| Plaintiff, ) | No. 14 CR 557 | |
| v. ) | | |
| ) | Judge Virginia M. Kendall | |
| CHARLISE D. WILLIAMS, ) | | |
| Defendant. ) | | |

## MEMORANDUM OPINION AND ORDER

In July 2013, a special grand jury indicted Defendant Charlise D. Williams on five counts of bankruptcy fraud in violation of 18 U.S.C. §§ 157(1) and 157(2). (Dkt. 1.) The Indictment alleged that Williams fraudulently filed Chapter 13 bankruptcy proceedings in order to stay collection activity by creditors seeking to enforce security interests against her condominium property while representing that she would make monthly payments under a repayment plan that she did not intend to repay, and transferring ownership of the property to her co-defendant, Ekkehard T. Wilke, for the purpose of avoiding creditors and in violation of bankruptcy rules. (*Id.*)

Following a six-day trial, a jury convicted Williams of all five counts. (Dkt. 145.) After the trial, through counsel, Williams moved for acquittal or new trial under Federal Rules of Criminal Procedure 29(b) and 33(a). [155] She argues that the Government presented insufficient evidence to support the guilty verdict and that the Court erred in: 1) limiting the cross-examinations of witnesses Carrolyn Patterson and David Sugarand, and co-defendant Ekkehard Wilke; 2) limiting her ability to impeach Wilke's credibility; and 3) excluding a good faith jury instruction while including the aider and abettor instruction. The Court denies the motion for the following reasons.

1

## I. Ample Evidence in the Record Supports the Jury Verdict

A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction against a defendant. *See* Fed. R. Crim. P. 29. A defendant faces "a nearly insurmountable hurdle" in contending that the jury had insufficient evidence to convict her. *See United States v. Miller*, 782 F.3d 793, 797 (7th Cir. 2015) (quoting *United States v. Torres-Chavez*, 744 F.3d 988, 993 (7th Cir. 2014)). Once convicted, courts review the evidence presented to the jury in the light most favorable to the Government and make all reasonable inferences in the Government's favor. *See United States v. Cejas*, 761 F.3d 717, 726 (7th Cir. 2014) (*citing United States v. Larkins*, 83 F.3d 162, 165 (7th Cir. 1996)). Courts may overturn a guilty verdict "only if the record is devoid of evidence from which a reasonable jury could find guilt beyond a reasonable doubt." *United States v. Jones*, 713 F.3d 336, 340 (7th Cir. 2013) (quoting *United States v. Stevenson*, 680 F.3d 854, 855-56 (7th Cir. 2012)). The jury must weigh the evidence and assess witnesses' credibility, and courts do not "second-guess the jury's assessment of the evidence." *See United States v. Rollins*, 544 F.3d 820, 835 (7th Cir. 2008).

Williams was convicted of violating 18 U.S.C. § 157(1)-(2), which required the Government to prove beyond a reasonable doubt that she knowingly devised or participated in a scheme to defraud with the intent to defraud, involving a materially false or fraudulent representation, claim, or promise, and for the purpose of executing or concealing the scheme, filed a document in a proceeding under Title 11. 18 U.S.C. § 157(1)-(2); *see United States v. Holstein*, 618 F.3d 610, 611-12 (7th Cir. 2010).

Williams asserts that the insufficiency of the evidence can be adduced from the trial without directing the Court to any detail on the weakness of any piece of evidence or how the overall evidence failed to prove her guilt. The evidence at trial included exhibits and testimony

that between 2003 and 2009, Williams filed five bankruptcy proceedings under Chapter 13 (Trial Tr. 147:6-19); possessed assets that could help repay her creditors, namely the condominium at 2901 South Michigan Avenue (*see e.g.*, Trial Tr. 156:1-25); that she transferred her condominium title to her co-defendant, Ekkehard Wilke, in order to have him falsely claimed ownership of the property and return the property back to her (*see e.g.*, Trial Tr. 187: 25; 188:1-17; 462:2-22); that she asked Wilke to put his name on the deed and mortgages, and instructed him on filing for bankruptcy himself in order for her to keep her condominium (*see e.g.*, Trial Tr. 402-50; 510-576); falsely testified under oath to a Bankruptcy Judge about the ownership of the condominium (*see e.g.*, Trial Tr. 867-870); and throughout, failed to make repayment plan payments (*see e.g.*, Trial Tr. 211:-222). Testimony included that of her co-defendant, who described the scheme, and testimony from Wilke's bankruptcy attorney, numerous bankruptcy court documents that corroborated the trial testimony, the two sets of deeds showing the flip flopping of the condominium, and dozens of emails within which Defendant directed others on how to proceed in the bankruptcy case showing her direct involvement and orchestration in the fraud. Accordingly, there was more than sufficient evidence for the jury to find her guilty beyond a reasonable doubt.

**II. The Court Did Not Err during Trial**

Alternatively, a court may vacate a judgment and grant a new trial upon the defendant's motion "if the interest of justice so requires." *See* Fed. R. Crim. P. 33; *see also United States v. Berg*, 714 F.3d 490, 500 (7th Cir. 2013); *United States v. Smith*, 674 F.3d 722, 728 (7th Cir. 2012). The Court need not view the evidence in the light most favorable to the Government. *See United States v. Washington*, 184 F.3d 653, 657 (7th Cir. 1999). Rather, "a defendant is entitled to a new trial if there is a reasonable possibility that a trial error had a prejudicial effect upon the

jury's verdict." *United States v. Van Eyl*, 468 F.3d 428, 436 (7th Cir. 2006); *see also United States v. Eberhart*, 388 F.3d 1043, 1048 (7th Cir. 2004), *overruled on other grounds*, 546 U.S. 12 (2005). Indeed, the Court cannot reweigh evidence or set aside a verdict because the Court thinks that another finding would have been more reasonable. *United States v. Reed*, 875 F.2d 107, 113 (7th Cir. 1989). Granting a new trial for issues relating to a witness's credibility or conflicting testimony requires extreme circumstances where the evidence "contradicts physical facts or laws." *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989). Broadly, Rule 33 motions are generally disfavored and courts only grant them in "extreme" cases. *See United States v. Linwood*, 142 F.3d 418, 422 (7th Cir. 1998) (quoting *United States v. Morales*, 902 F.2d 604, 605 (7th Cir. 1990) (internal citations omitted); *see also United States v. Kamel*, 965 F.2d 484, 490 n.7 (7th Cir. 1992). Jury verdicts are "not to be overturned lightly." *United States v. Santos*, 20 F.3d 280, 285 (7th Cir. 1994) (citations omitted).

**A. Testimony of Witnesses Carrolyn Patterson and David Sugar**

Williams claims that the Court erred in narrowing her cross-examination of Government witnesses Carrolyn Patterson and David Sugar, which, if permitted, would have allowed her to impeach their credibility and show their bias. Through this error, Williams argues, the Court violated her Sixth Amendment right to effectively cross-examine witnesses at her trial. (Dkt. 155, at 2.) *See Chambers v. Mississippi*, 410 U.S. 284, 295 (1973). Williams sought to cross-examine Patterson, a member of the Board of Directors for the South Commons Condominium Association ("SCCA"), and Sugar, General Counsel for SCCA, on whether Patterson and Sugar treated her differently than any other tenant because they were aware of the lawsuit she filed against the SCCA and were thus biased in their motives to testify against Williams. (*Id.* at 3.) The Court did not permit Williams to question Patterson and Sugar on this particular issue. (Trial

Tr. 380-381.) Nor did the Court permit Williams to question Patterson and Sugar about their knowledge of the details of the lawsuit, sought by Williams to examine their credibility. (Trial Tr. 848-849.)

Neither exclusion violated Williams's constitutional right to cross-examine Patterson and Sugar. Courts have "wide discretion" to decide which evidence to admit through cross-examination. *See United States v. Linzy*, 604 F.3d 319, 323 (7th Cir. 2010) (quoting *United States v. Reyes*, 542 F.3d 588, 593 (7th Cir. 2008)). Cross-examination limitations that do not foreclose defendants' opportunity to establish witnesses' biased motives to testify do not implicate the confrontation clause. *Id.* (citing *United States v. Recendiz*, 557 F.3d 511, 530 (7th Cir. 2009)). This includes courts' ability to weigh the relevance of particular evidence against its unfairly prejudicial effect. *See* Fed. R. Evid. 403.

On cross examination of Patterson, she was asked by defense counsel, "But you were also aware that Ms. Williams had filed a lawsuit against South Commons?" Patterson responded, "Yes." (Trial Tr. 371:4-6.) She was then further asked whether South Commons had to pay legal fees to defend that suit, to which she also replied yes. (Trial Tr. 371:7-9.) Patterson was also asked whether she knew that Williams had tried to get others to join a class action, and again the answer was yes. (Trial Tr. 371:10-13.) At this point, there was an objection to the line of cross, and the Court held a sidebar to explore where the defense was going with the lawsuit. (Trial Tr. 371-374.) At the sidebar, the defense posited that they believed she was treated differently in that the Condo Association did not offer her a payment plan, which is why she eventually, according to her attorneys, had to file for bankruptcy. (Trial Tr. 372:1-10.) The Court excluded further examination on those grounds, finding that this was merely an effort to create jury nullification as an effort on the defense's part to present to the jury the idea that the assessments

5

were not valid debts, such that Williams could not have committed a fraud. (Trial Tr. 372:11-20.) Therefore, the Court only limited an area that was not relevant and highly prejudicial in that it could have been used to argue jury nullification to the jury. In truth, the Court permitted numerous questions regarding whether others were given payment plans and whether the defendant was offered one. (Trial Tr. 368-372.) The Court also permitted the line of questions that elicited that Williams may have been treated differently because she had filed a lawsuit, encouraged others to join her in her lawsuit, and was not offered a payment plan. (*Id.*) As such, the defense was given the materials that it needed to argue, if it wanted, that Williams was treated differently by South Commons due to her filing of the lawsuit. What she was not permitted to argue was that the assessments were invalid debts, and therefore could not form the basis for a bankruptcy filing. (Trial Tr. 371-74.) Williams was not foreclosed from cross-examining Patterson to expose any bias or motives to testify – if such a bias or motive could even be inferred from the filing of the lawsuit. Instead, the Court correctly limited Patterson's testimony in order to prevent a collateral issue from being tried, one which could result in confusion and jury nullification, and was not even questioned on direct. Accordingly, the Court correctly acted within its discretion to limit the cross-examinations of Patterson by determining that the prejudicial effect stemming from testimony about her prior lawsuit would outweigh the relevance of any information regarding it: "And the reason I say that is because it isn't a defense for this jury to unilaterally . . . look at the problem in the underlying debt and say, you know, that not a good debt, like that wasn't right that they made her have that debt, which is not a defense to any of the elements." (Trial Tr. 375:2-6). The Court had already permitted the testimony regarding the filing of the lawsuit and the fact that the Condo Association did not permit Williams to file for a payment plan, which was sufficient evidence to allow the defense to

attempt to demonstrate potential bias on the part of the witness. *See Linzy*, 604 F.3d at 323; Fed. R. Evid. 403.

Williams seeks to argue that the cross examination of Sugar was similarly flawed. Again, Williams is incorrect. The Court allowed the defense to inquire about the filing of the lawsuit and the collection of debts through payment plans. (Trial Tr. 654-658.) The cross examination fell flat because Sugar testified that no lawsuit was filed, and she had nothing to do with payment plans. Regardless, the cross examination of the witness to show bias against Williams due to her filing of the lawsuit was permitted by the Court and was conducted. Courts can exclude evidence where the risk of wasting time by showing it outweighs its probative value. *See* Fed. R. Evid. 403. This Court found that the relevance of the details of Williams's other lawsuit were not sufficiently material to this trial to permit the attack of Patterson and Sugar through this particular line of questioning "because [they don't] go to prove or disprove an element" of the crimes for which Williams faced trial. (Trial Tr. 848: 21-22.) Therefore, again, the Court acted within its discretion in making this call. *See Linzy*, 604 F.3d at 323; Fed. R. Evid. 403.

Even if Williams could demonstrate that the Court had made these rulings in error, she does not attempt to argue, let alone set forth evidence, that these limitations on her cross-examination of Patterson and Sugar actually prejudiced her during her trial. (*See* Dkt. 155, at 3-4.) She must make such a showing to show that she is entitled to a new trial on these grounds. *See Van Eyl*, 468 F.3d at 436; *see also Eberhart*, 388 F.3d at 1048. She does not. (*Id.*) Williams's Motion for New Trial is therefore denied on this basis.

    **B. Testimony of Witness Ekkehard Wilke**

Williams also claims that the Court erred in the evidence it permitted through the testimony of her co-defendant, Ekkehard Wilke. (Dkt. 155, at 5-7.) Williams sets forth two

7

bases for this claim.  First, she again argues that the Court erred in limiting her cross-examination of Wilke about his truthfulness and credibility regarding the Riverside Police Department's investigation into his alleged involvement with a "prostitution ring." (*Id.* at 5.) Second, she claims that the Court erred in precluding her cross-examination about Wilke's prior bad acts because she failed to notify Wilke of such inquiry in advance. (*Id.* at 6-7.)

Here, once again, Williams is incorrect in what the Court permitted and what actually occurred at the trial. The Court, in fact, permitted the cross-examination of Wilke on the far-fetched theory that life had become so challenging for Wilke living in his apartment due to numerous complaints against him made by a neighbor that they he chose to leave the apartment, and that is why he filed for bankruptcy. (Trial Tr. 636-638.) The defense offered this to show that Wilke had a motive to file the bankruptcy claim himself and, supposedly, if he had such a motive, it would negate that Williams had the motive to file. This, of course, was belied by the numerous emails directly asking Wilke to file and the reasons for doing so. Regardless, the Court allowed the defense to ask Wilke questions about those neighbor complaints, properly prohibiting the hearsay of the substance of the complaints (i.e., what was said to the Riverside Police Department), and allowed the defense to question Wilke about how he paid thousands of dollars to other women on his bank records. (*See* Trial Tr. 613-615; 622-623; 632-634; 637-640; 656-668.) When crossed about his relationship with them, Wilke called one his significant other and further stated that he did not need to move due to any neighbor complaints filed against him – which even he admitted were made. (Trial Tr. 636-639.) Once again, the Court gave the defense plenty of cross-examination leeway while keeping out the salacious and conjectural theory that the women were "sex workers" (of which the only evidence available was that he gave women money while he was in sexual relationship with them). There was no proffer of

8

evidence that the women were paid for sex acts or were in some business relationship with him or others for sex.

Finally, after the defense agreed to not elicit any testimony that the neighbor complained that Wilke was running a "prostitution ring" in his condominium – which was hearsay, and not corroborated by any evidence other than the neighbor's own conjecture – defense counsel then crossed Wilke with the accusation that he withheld information from the FBI when he was interviewed. (Trial Tr. 655-656.) Specifically, defense counsel sought to reveal that Wilke failed to tell the FBI that he was investigated for this prostitution ring by the police based on the fact that the police took the complaint and looked into the accusation. Wilke was never charged in any criminal complaint or indictment or notified that he was a target of an investigation. (Trial Tr. 660.) On the stand, in response, Wilke denied that he withheld information from the FBI and, when questioned directly on whether he withheld the fact that he had been investigated for running a prostitution ring (a question asked in open court), he denied this again. (Trial Tr. 656:9-18.) First, the questions themselves were asked, and so Williams cannot claim that she was prohibited from going into this line of questioning. She did question Wilke about whether he lied to the FBI. Second, there never was a charge, an indictment, or any other formal document that defense counsel could use to impeach Williams. When he denied that he withheld this information, it therefore would have been left to the defense to prove up that he was lying about that denial. They could have, if they had the ability to do so. They did not, most likely because there was no evidence in either a report or interview, or other court or investigative document, to demonstrate the falsity of the denial. If there was, it was not presented to the Court. So once again, the defense was permitted to inquire to a point in order to attack the witness; the defense did in fact inquire; and the Court then correctly limited any inflammatory

accusations that were unsupported by any evidence, which is exactly what the Court should have done under the 403 analysis. *See* Fed. R. Evid. 403. Courts have wide discretion in determining which evidence to include and exclude depending on whether its probative value outweighs its unfairly prejudicial effect. *See Linzy*, 604 F.3d at 323. Certainly, defendants must have the opportunity to impeach witnesses' credibility, but this opportunity is not without limits. *See id.*

Notwithstanding what Wilke did or did not disclose to the Government about the investigations into his involvement with a "prostitution ring," because of the sexualized nature of this evidence, the Court determined that such subject matter was "highly prejudicial" and was not sufficiently probative of his credibility, particularly in light of the fact that Williams could otherwise show lies and omissions directly related to the case at hand which did not raise such potential for prejudice. (*See e.g.*, Trial Tr. 625, 627, 656-60, 663-67, 963.) Williams argues that the Court precluded this line of questioning by improperly requiring the defense to raise such questions in advance with the Court. (*See* Dkt. 155, 6-7.) But, as made clear during trial, the Court permitted the line of cross and merely limited it when defense counsel failed to supply any support for the line of questioning "because of it being prejudicial and harmful to the jury." (Trial Tr. 667:2-9.) This is squarely within the bounds of the Court's discretion regarding the evidence permitted through cross-examination. *See id*.

Beyond the appropriateness of this evidentiary ruling, Williams once again fails to identify or evince that this limitation on Wilke's cross-examination actually prejudiced her during her trial. (*See* Dkt. 155, at 5-7.) Without having made such a showing, she is not entitled to a new trial. *See Van Eyl*, 468 F.3d at 436; *see also Eberhart*, 388 F.3d at 1048. Accordingly, the Court acted within its discretion to bar William's cross-examination of Wilke on the

truthfulness of his statements to the Government about the investigations into prostitution-related activities, and Williams's Motion for New Trial is also denied on this basis.

**C. Jury Instructions**

Finally, Williams contends that the Court erred by excluding a good faith jury instruction and including an instruction on aider and abettor liability.

Williams argues that a good faith jury instruction would have been appropriate because the defense provided evidence that Williams did not intend to commit fraud in these bankruptcy proceedings, namely that she willingly disclosed her IRS debt in her petitions when not required to do so. (*See* Dkt. 155, at 7-8; Trial Tr. 878:1-12.) Williams further asserts that she was entitled to a good faith instruction because at all times during the proceedings she tried to make a feasible plan. (*Id.*) Regardless, courts need not provide a good faith instruction where evidence does not support a theory of good faith and the jury instructions properly define the elements of the crime. *United States v. Kokenis*, 662 F.3d 919, 929-31 (7th Cir. 2011). Nor is a defendant entitled to a good faith jury instruction where the jury is instructed that the prosecution has the burden of proving her intent to defraud, which is mutually exclusive with a defendant acting in good faith, thus rendering a good faith instruction redundant. *Id.*; *United States v. Caputo*, 517 F.3d 935, 942 (7th Cir. 2008); *United States v. Mutuc*, 349 F.2d 930, 934 (7th Cir. 2003).

Here, the jury instructions properly defined the elements of the charges that Williams faced. In particular, the jury instructions defined what it meant for the purposes of these crimes to act "knowingly" or "with intent to defraud," first explaining that:

> A person acts knowingly if she realizes what she's doing and is aware of the nature of her conduct and does not act through ignorance, mistake, or accident. So in deciding whether the defendant acted knowingly, you may consider all of the evidence, including what the defendant did or said.

(Trial Tr. 975:16-20.)

Further:

> A person acts with intent to defraud if she acts knowingly with the intent to deceive or cheat the victim in order to cause a gain of money or property to the defendant or another or the potential loss of money or property to another.

(Trial Tr. 975:21-24.)

The parties agreed to these instructions, which rely on the Seventh Circuit Criminal Pattern Jury Instructions. (*See* Dkt. 102, at 15-16.) *See* Seventh Circuit Criminal Pattern Jury Instruction 4.10 (defining "knowingly"); 18 U.S.C. §§ 1341 & 1343 (defining "intent to defraud"). The instructions required the jurors to find beyond a reasonable doubt that Williams "knowingly devised or participated in a scheme to defraud" and that she "did so with the intent to defraud." (Trial Tr. 973: 3:10; 974:3:10.) The instructions for "knowingly" and "intent to defraud" by definition show a lack of good faith, so requiring a simultaneous good faith instruction would make little sense for Williams where "[i]t is self-evident that one with an intent to defraud does not act in good faith." *See Mutuc*, 349 F.2d at 934. Significantly, the record showed that Williams explicitly directed Wilke to engage in the acts underlying the fraudulent conduct undercuts evidence to support a good faith theory of defense, so the evidence does not support a good faith theory. (*See e.g.*, Trial Tr. 402-50; 510-576). *See Kokenis*, 662 F.3d at 929-30. Accordingly, the jury was adequately informed about the law and Williams was not entitled to an instruction on good faith. *See id.*; *Kokenis*, 662 F.3d at 930-31; *Caputo*, 517 F.3d at 942.

As far as the instruction on aider and abettor liability, the Court instructed the jury that:

> Any person who knowingly induces or procures the commission of an offense may be found guilty of that offense if he or she knowingly participated in the criminal activity and tried to make it succeed.

(Trial Tr. 976:15-18.)

This instruction relies on the Seventh Circuit's Criminal Pattern Jury Instructions, which provide that courts should instruct the jury that:

> Any person who knowingly [aids; counsels; commands; induces; or procures] the commission of an offense may be found guilty of that offense if he knowingly participated in the criminal activity and tried to make it succeed.

*See* Seventh Circuit Criminal Pattern Jury Instruction 5.06(a). The Court is "afforded substantial discretion with respect to the precise wording of instructions so long as the final result, read as a whole, completely and correctly states the law." *United States v. Garrett*, 757 F.3d 560, 570 (7th Cir. 2014) (quoting *United States v. DiSantis*, 565 F.3d 354, 359 (7th Cir. 2009)). The Court "presume[s] that the Pattern Criminal Jury Instructions for the Seventh Circuit correctly state the law." *United States v. Marr*, 760 F.3d 733, 744 (7th Cir. 2014) (citing *United States v. Leahy*, 464 F.3d 773, 796 (7th Cir. 2006)). Here, the Court's use of the Seventh Circuit Criminal Pattern instructions properly represented the law prohibiting the commission of bankruptcy fraud. (*See* Trial Tr. 976:15-18.) *See* Seventh Circuit Criminal Pattern Jury Instruction 5.06(a). The instruction properly informed the jury on the law in this Circuit. *See Garrett*, 757 F.3d at 570 (instruction only improper if it "mislead[s] the jury by failing to correctly and sufficiently inform the jury of the applicable law"). Further, again, the record expressly shows Williams directing Wilke to engage in the acts underlying the fraudulent conduct, so there is reason for providing an instruction on aider and abettor liability. (*See e.g.*, Trial Tr. 402-50; 510-576). The Court therefore did not err in providing this instruction to the jury.

Once again, for both of her jury instruction issues, Williams fails to show how these alleged errors prejudiced the outcome of her case. (*See* Dkt. 155, at 7-8.) She is therefore not entitled to a new trial on the grounds of improper jury instructions and her Motion for New Trial is denied. *See Van Eyl*, 468 F.3d at 436; *see also Eberhart*, 388 F.3d at 1048.

## **CONCLUSION**

For the foregoing reasons, pursuant to Federal Rules of Criminal Procedure 29 and 33, the Court denies Williams's Motion for Acquittal or New Trial.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: 12/14/2016